The bill in this cause was filed for the purpose, first, of obtaining an account of cash profits derived by the defendant from the purchase of two lots of land in West Hoboken, the erection of two houses thereon and the sale thereof, and a decree that the *Page 72 
complainant was entitled to one-half thereof; and, second, for a declaration that the defendant holds a certain house and lot, which was conveyed to him in exchange for the houses and lots first mentioned, in trust, as to an undivided one-half thereof, for the complainant.
The basis of the complainant's claim, as stated in his bill, is a parol agreement entered into by him with the defendant prior to the purchase of the two lots first mentioned, by which the defendant agreed to make the purchase on joint account with the complainant, and that everything done in the way of purchasing, building, selling and exchanging was so done on joint account. The allegation of the bill is that the complainant "did enter into an oral agreement" with the defendant, and in consideration of money to be advanced by the complainant to the defendant, and of the endorsement of the notes of the defendant, in order to raise money for the purpose of buying said lands and building thereon, the defendant
 "should take and hold the title of said lands and buildings, and sell or exchange the same to others for the best possible price he could obtain, and for the best and mutual gain and advantage of himself and your orator, as a joint venture, and that he would well and faithfully account to your orator for one-half of any profit derived from said venture."
The bill does not pray for an answer, either under or without oath. The defendant answered under oath, denied any such agreement as that set up in the bill, and answered in detail all the specific charges in the bill, and also set up the statute of frauds.
At the hearing I held, for reasons then stated orally, that the complainant had not made out the allegation of his bill that there was a contract between the parties for a joint venture, and advised a decree dismissing the bill. Not a particle of written evidence was produced in support of complainant's allegation of the alleged contract.
Shortly after that decree was made, a motion to open the decree and for a rehearing of the cause, based upon affidavits of newly-discovered evidence, was made. Those affidavits were made by several persons, and stated admissions made by the *Page 73 
defendant in affiants' hearing that the transaction was a joint venture. The admissions were of the same character as those relied upon by the complainant on proof at the final hearing in the case of Smith v.Burnham, 3 Sumn. 435 (1838), and were disallowed probative force by Mr. Justice Story. The motion might well be refused upon that ground, upon the authority of that case.
But, admitting, for the purposes of the motion, that the evidence, after the affiants were subjected to the test of cross-examination, would establish the fact of a joint venture in this case, there still remains to be dealt with the question of the application to the transaction of the statute of frauds. And if it should be found, upon the examination of the question, upon principle and authority, that that statute is a defence, it's not worth while to open the case to produce the proofs in open court.
I have looked into the authorities with some care, and come to the conclusion that the statute is a bar to the complainant's relief.
It may be conceded that a partnership may be formed for the purpose of dealing in real estate; and it may be further admitted that if the members of a going partnership, with a partnership fund, shall, in pursuance of a parol agreement between them, purchase with partnership funds real estate for the purpose of being used, not as an incident in the ordinary business of the partnership, but purely for speculative purposes, the title being taken in the name of one member of the firm, he will be held to hold it for the benefit of the firm; but this holding will not be based upon the parol agreement between the parties, but upon a trust resulting from the fact that the partnership funds and partnership credits were used for the purchase thereof.
The question still remains whether if two persons, not theretofore engaged in business jointly as partners or otherwise, and having no joint or partnership funds, shall agree that they will go into a single joint venture of the purchase of real estate upon a parol agreement that the profit, if any, shall be equally divided between them, and the title be taken in the name of one, the other, without having contributed anything toward the purchase-price, can claim a benefit from the purchase. *Page 74 
And that is the present case. There was here no previous general established partnership or joint operations between the parties, nor any joint fund, nor did the complainant advance any money whatever towards the purchase. The facts show that all he did was to endorse the note of the defendant upon which money was raised to make the first payment on the purchase of the lots; and then, afterwards, when further money was needed by the defendant in the erection of the houses, the complainant endorsed one or more notes for him. The defendant, however, paid these notes, and the complainant contributed no money whatever.
It is not necessary to cite authorities for the position that if A employs B to purchase a certain piece of real estate for him, and furnishes him with the money to pay for it, and B negotiates for and purchases the premises, takes the title in his own name, and pays for it with his own money, A, in the absence of any writing signed by B, by reason of the statute of frauds, can have no remedy against him.
On the other hand, if A employs B to purchase a certain piece of real estate for him, and gives him the money for that purpose, and B negotiates for and takes the title in his own name, but pays A's money for it, B holds the title in trust for A, though there be no writing signed by him, on the ground that such trust resulted from the circumstances of the case.
In each of these supposed cases the title was taken in the name of B contrary to the parol understanding between A and B; but in either case, if the original parol agreement had been that the title should be taken by B for the benefit of A, the result would have been the same. In the one case, B could hold the title against A if he did not use A's money in payment of the purchase-money; in the other case, B holds the title for A because he did use A's money in payment of the purchase-money.
But it is alleged, and there is some appearance of authority for the position, that if such a contract, resting wholly in parol, were made for a joint enterprise in the nature of a partnership, the result would be otherwise. I am unable to adopt that view, and I think it is not sustained by any weight of authority.
The two cases principally relied upon in its support are *Page 75 Forster v. Hale, 3 Ves. 696, before Sir William Grant, master of the rolls, and, on appeal, before the Earl of Rosslyn, lord chancellor,5 Ves. 309 (1800), and Dale v. Hamilton, decided by Vice-Chancellor Wigram, 5 Hare 369 (1846), and, on appeal, by Lord Cranworth, lord chancellor, 2 Phil. 266 (1848).
Mr. Lindley, late master of the rolls, in his work onPartnership, states the law thus (at p. *81):
 "First. A partnership [with regard to real estate] constituted without writing is as valid as one constituted by writing; and second, if a partnership is proved to exist, then it may be shown by parol evidence that its property consists of land."
Speaking of Forster v. Hale, supra, he quotes the famous dictum of the Earl of Rosslyn in that case, and then refers to Dale v. Hamilton,supra, and the elaborate and somewhat celebrated judgment of Vice-Chancellor Wigram in that case, and says (at p. *82):
 "This is certainly going a long way towards repealing the statute of frauds. Dale v. Hamilton was appealed from, and the plaintiff obtained a decree without any issue as to the fact of partnership."
But he adds:
 "Both in Forster v. Hale and in Dale v. Hamilton there was a signed writing showing a trust in the plaintiff's favor, and this circumstance was relied upon by Sir William Grant in the former case, and by Lord Cottenham in the latter; but, curiously enough, the signed writing was not made the foundation of the decision of Lord Rosslyn in Forster v. Hale, and was not considered sufficient by Vice-Chancellor Wigram in Dale v. Hamilton."
This criticism of Mr. Lindley is perfectly just. There was no occasion whatever for the elaborate examination of the authorities indulged in by Vice-Chancellor Wigram, for there was a distinct paper, signed by the persons holding title to the real estate, by which they acknowledged the right of the plaintiff. And in Forster v. Hale the case was put by Sir William Grant distinctly on the writing, and all that was said by Lord Rosslyn on the general subject was a pure obiter dictum. I will not *Page 76 
here repeat it, but content myself with saying that a careful examination of it shows that it does not support the proposition here in question.
Then Mr. Lindley proceeds to say that Vice-Chancellor Wigram's decision is difficult to reconcile with sound principle, or with the more recent "decision of the case of Caddick v. Skidmore," decided by Lord Cranworth, lord chancellor, as reported in 2 De G. J. 52(1858), on appeal. The bill was there filed for an account and a share in the profits of a mining operation, and was based upon an alleged co-partnership agreement, one defence being that there was no sufficient agreement within the statute of frauds. The bill was dismissed on this ground by Vice-Chancellor Kindersley, and again, on appeal, by Lord Cranworth. The head-note is:
 "An agreement between A, a lessee of a mine, and B, to become partners in the mine, paying the reserved rent, sub-letting the mine at a royalty, and dividing the profits. — Held, to be within the statute of frauds, and not sufficiently proved by a receipt signed by A and given to B for a sum as B's share of the head rent of the mine, the sum being exactly half of that rent."
And the lord chancellor, in delivering judgment, said: "The grounds upon which I proceed are that the agreement was one for the purchase of an interest in land, which was not reduced into writing so that its terms can be ascertained; that there was no part performance; and that the defendant sets up a totally different contract from that which is insisted upon by the plaintiff, and claims the benefit of the statute of frauds."
The older case (1732) of Lake v. Gibson, 1 Eq. Cas. Abr. 290; 3 Wms.P. 158 (sub nom. Lake v. Craddock); and the later case (1855) ofEssex v. Essex, 20 Beav. 442 (at p. 449), decided by Sir John Romilly, not by Lord Cransworth. as stated by Mr. Brown (§ 261c), do not, when carefully examined, support the complainant's case. They dealt with written contracts to carry on partnership for a certain period of years, with an option to the partnership to buy the lands on which it was carried on, which was owned by one of the partners, at any time during that period, and it was held that the result of the transaction was to make the real estate personal property, and that the option to *Page 77 
purchase did not expire with the exact time limited in the written contract, because the partnership business was orally extended upon the same terms beyond the time limited in the contract.
Against the general proposition above referred to, namely, that the mere fact of a joint or partnership enterprise will prevent the operation of the statute, may be cited the old case of Bartlett v.Pickersgill, 1 Eden 515 (1760); 1 Cox 15. The leading case in this country is Smith v. Burnham, supra, where Mr. Justice Story makes an elaborate examination of all the authorities up that date (1838). There the learned justice, in a case much like the present, held, first, that the plaintiff's case was not made out; and, second, if it was made out, it was within the statute of frauds.
The case in this state of Personette v. Pryme, 7 Stew. Eq. 26, simply holds that two owners of land — a farm — could agree by parol that the working of the property on a farm should be considered and conducted as partnership business, each owner contributing equally to the support of a widow, whose support for life was a charge on the land, and to the expenses and taxes, and that an account should be kept of the proceeds derived from the sale of the produce, and of the sale of any sand therefrom.
The case of Chester v. Dickerson, 54 N. Y. 1 (1873), was a suit against three persons who were alleged by the plaintiff to be engaged in partnership in the buying and selling of lands, charging them with fraud in representations made with regard to those lands to induce a sale thereof to the plaintiff. The title was in one of the defendants, and the representation was made by one of the defendants, who was not the owner of the land; and the alleged partnership between them was proven entirely by parol. The question here involved was not therein involved; though the learned justice, in delivering the opinion of the court of appeals, held that a partnership in dealings in land could exist by parol. In the course of the opinion the court approves of the reasoning of Vice-Chancellor Wigram in Dale v. Hamilton, but does not call attention to the fact that there was a written declaration, signed by the defendants, in that case, or to the fact that on appeal the plaintiff's case was rested wholly *Page 78 
on that written contract. These circumstances prevent the case from having any application to the present case.
Another case in New York is Traphagen v. Burt, 67 N. Y. 30(1876). There three parties were confessedly engaged in the business of buying and improving real estate. They bought two farms, and the title was conveyed to the parties jointly. Moneys were expended by all the parties in the improvement of these farms, and there was an established partnership fund and going business. Then one of the parties, by consent of the others, purchased a third farm, and, without the knowledge or consent of his partners, had the title taken in his own name. Afterwards, it was treated as partnership property precisely as the other two farms. The head-note states the decision thus:
 "After discovery by plaintiff of the fact that the farm was conveyed to defendant, the parties entered into an agreement that plaintiff should convey to defendant his interest in one of the other farms, and in the personal property thereon, defendant agreeing, among other things, to convey to plaintiff an undivided one-half interest in the farm in question. The agreement was fully executed save in respect to such conveyance, which defendant refused to execute. — Held, that aside from the question of the co-partnership, plaintiff was entitled to and could enforce a specific performance in this particular."
An authority in New York in favor of the position I have above taken is Levy v. Brush,45 N. Y. 589. The head-note of that case is as follows:
 "A verbal agreement was entered into between the plaintiff and defendant, by which the latter agreed to bid off in his own name, and enter into a contract for the purchase of land, and pay from his own funds the necessary amount for that purpose for the joint benefit of both. The plaintiff was to reimburse one-half of the money so paid; the deed to be taken in the name of both. — Held, the defendant having bid off the land in his name and taken a contract thereof, but refused to convey one-half of the contract to the plaintiff, that no action would lie to compel the execution of the agreement."
In Bissell v. Harrington, 18 Hun 81 (1879), an agreement was made between the members of a partnership already existing to buy a farm on speculation on account of the partnership, each party furnishing his share of the funds necessary to carry *Page 79 
out the speculation. That distinguishes the case from the present.
In Everhart's Appeal, 106 Pa. St. 349 (1884), the headnotes are:
 "1. Where a partnership is formed for the purpose of buying and selling lands, one of the partners cannot establish his interest in such lands by parol evidence, where the other sets up the statute of frauds requiring agreements relating to lands to be in writing. 2. But that rule does not apply to an agreement for a division of profits arising from the sale of lands so purchased by the partnership."
The case is quite similiar to the one before the court, and the proofs consisted entirely of proof of admissions by the defendant of the complainant's one-half interest in the enterprise; and were also distinct admissions relating to a large sum of money and other personal chattels in the hands of the defendant representing the profits of the transaction. The court held that as to those profits the admission was binding, but not as to any of the real estate not yet disposed of.
The above remarks cover the most important of the authorities cited by Mr. Brown in his treatise on the Statute of Frauds § 261, et. seq.; and by Mr. Reed in his treatise, volume 2, section 727, et seq.
The result of my consideration of the subject is that where, as here, there is no previous partnership or joint enterprise between the two parties, A and B, and they agree, by parol, that B shall purchase and take title in his own name to a single piece of real estate, and hold the same for the benefit of both, and A contributes no money to the enterprise, and there is no written proof of the contract, the statute of frauds prevents A from successfully claiming an interest in the land.
 The motion to open the decree is refused, with costs.
 *Page 127