O'BRYAN v. ZUBER.

Opinion delivered April 20, 1925.

1. FRAUDS, STATUTE OF—NECESSITY OF PLEADING.—Where plaintiff sued on an alleged contract of partnership between himself and defendant, whereby defendant was to take title to land in his own name, for the benefit of himself and plaintiff as partners, and defendant specifically denied the existence of such a contract, it was unnecessary for defendant to plead the statute specially, as it devolved on plaintiff to prove that the contract was in writing.

2. FRAUDS, STATUTE OF—CONTRACT TO BUY LAND.—An oral contract whereby defendant was to take title to land in his own name and hold same for the benefit of himself and plaintiff, plaintiff paying no money, was within the statute.

3. FRAUDS, STATUTE OF—CONTRACT TO BUY LAND.—In a suit by plaintiff on an alleged oral contract of partnership by which defendant was to take title to land in his own name and hold same for the benefit of himself and plaintiff as equal partners, evidence *held* not to establish such a partnership as to the ownership of the land as would take the contract out of the frauds.

4. TRUSTS—RESULTING TRUST.—An oral contract by which defendant was to take title to land in his own name for the benefit of himself and plaintiff, under which the land was purchased in defendant's name and with his money, and plaintiff executed no written obligation to defendant for his half of the purchase money, *held* not to create a resulting trust.

5. FRAUDS, STATUTE OF—AGREEMENT TO CULTIVATE LAND.—An oral agreement between plaintiff and defendant that certain land purchased in defendant's name was to be operated and cultivated by them for their joint benefit was not within the statute of frauds to that extent, though within the statute so far as it provided that plaintiff should have an interest in the land.

Appeal from Pike Chancery Court; *C. E. Johnson,* Chancellor; reversed in part.

*Snodgress & Snodgress* and *J. C. Marshall,* for appellant.

*W. T. Saye* and *J. N. Saye,* for appellee.

WOOD, J. This is an action by the appellee against the appellant in the Pike Chancery Court. The appellee alleged in his complaint that, on or about April first, 1923, he and the appellant associated themselves together as

partners for the purpose of buying, cultivating and operating certain lands in Pike County, Arkansas, consisting of 123.95 acres; that each should pay one-half of the purchase price of the land and share equally in the expense and profits in the cultivation and operation of the lands; that, pursuant to the agreement, the lands were purchased by them, title being taken in the name of the appellant in trust for the partnership; that, during the year 1923, peach orchards on the lands produced peaches of the gross value of $11,100; that the expenses incurred in cultivating the orchards and gathering and marketing the crop amounted to $3,200, leaving a net profit accruing to the partnership of $7,900; that appellee was entitled to receive one-half of such profit, amounting to the sum of $3,950; that appellant had repudiated appellee's interest in the partnership and had thus converted to his own use appellee's share of the profits. Appellee further alleged that he borrowed from appellant the sum of $1,500 at the time the lands were purchased, for which he agreed to pay the appellant eight per cent. interest from April 1, 1923, until the same was paid; that appellant was entitled to a set-off in the sum of $1,500 at eight per cent. interest from April 1, 1923, against the $3,950, appellee's share of the profits, leaving a balance due appellee from the appellant in the sum of $2,450. Appellee prayed for an accounting and a sale of the lands mentioned, and a division of the proceeds as their interests might appear, and for judgment against the appellant in the sum of $2,450, and that same be declared a lien upon the appellant's interest in the partnership. The appellant in his answer denied the allegations of the complaint.

The appellee testified substantially as follows: He and the appellant were both employed by the American Refrigerator Transit Company. Appellee and appellant agreed to associate themselves together for the purpose of buying 123 acres of land in Pike County, about thirty-three acres of which was a peach orchard. In pursuance of such agreement, they purchased the land about April 1,

1923, from the Caddo River Lumber Company, for a consideration of $3,000. The agreement between the appellant and appellee concerning the purchase of the land was oral. The appellee did not have the money to pay his part of the purchase price, and the appellant suggested that he would let appellee have the sum of $1,500, for which the appellee was to pay interest at the rate of eight per cent. The agreement between them was that they should purchase the land and each one own an undivided half interest in it. Appellant was to pay $1,500 and appellee $1,500. The deed was made out in appellant's name. Appellee further testified in detail to the effect that he had agreed to superintend the application of the spraying material on the orchard, and that he did so until the time the appellee's son came down on his vacation in June and relieved the appellee of supervision. There was no agreement between appellee and appellant to the effect that appellee was to be paid a salary for his services in connection with the peach crop. There was no agreement as to the time that either party would devote to the crop. On July 3, 1923, appellee had an operation for appendicitis, and, a few days after his release from the hospital, appellant advised appellee that the latter had not fulfilled his part of the transaction, and that appellee could either accept the *pro rata* payment of the amount he had put in on the orchard for expenses or drop out of it altogether. This occurred the day before the crop started moving. Appellee stated that the approximate value of the land was the sum of $3,000. On cross-examination he stated that appellant loaned him the $1,500 when the deed was made over in appellant's name. Appellant did not take any note or written memorandum as evidence of the loan. Appellant never gave the money representing the purchase price of the land into appellee's hands. The appellant purchased appellee's part of the land, and appellee was to pay him from the proceeds of the crop the principal sum of $1,500 *plus* eight per cent. interest, after the crop was harvested. If the crop had lost $10,000, appellee considered himself morally obli-

gated to fulfill his part of the agreement. Appellee did not claim that appellant actually loaned him $1,500 to pay for his half of the property. Appellee was to pay the appellant the $1,500, after the crop had been sold, out of appellee's half of the net proceeds of the crop. Appellee gave no security to appellant except his moral obligation to pay from appellee's half of the net proceeds or profits. The appellee was present when the arrangements were made for the purchase of the farm in controversy, but was not present when the appellant paid the cash for the land and the deed was turned over to appellant. Appellee had seen the deed. The appellee had no information about the cost of producing the crop or the gross or net return, except that given him by the appellant. All appellee had actually put into the farm or the peach orchard in actual cash was the sum of $338, which appellant had returned to the appellee. If appellant had not suggested to appellee that he would advance the $1,500 for appellee, appellee would have arranged otherwise to secure the money.

John T. Stinson testified that he was director of agricultural development for the Missouri Pacific Railroad Company, and that he was acquainted with the parties to the action and with the land in controversy. He made a trip with the parties, inspecting the orchards and strawberry fields. At that time they inspected the orchard in controversy. Previous to that time witness had an arrangement with the appellee by which they hoped to purchase the orchard jointly, and witness and appellee had made an offer for the same, but afterwards witness found that he could not raise the money to pay for his half. On the day witness and the parties to the action went to inspect the orchard, witness remained at the motor car while appellee and appellant made the inspection. After the inspection, appellee and appellant went into the office of the Caddo Company, and, when they came out, witness asked appellee, in the presence of the appellant, if they had purchased the farm, and appellee answered in the affirmative. Witness then

asked appellant if he was going in with the appellee on the purchase, and talked with the appellant about the prospects of the peach crop, etc., and the appellant answered that he was going in with the appellee on the purchase. Witness had conversed with the appellant a number of times since the purchase, during the summer, in his office, because witness was interested in the proposition. He had endeavored to purchase a half interest in it, and was naturally interested in the outcome. He never lost an opportunity to ask appellant how things were coming. Witness was asked the following question: "In speaking to him (appellant) about that orchard after that, did you refer to it as the property which he and Mr. Zuber had purchased?" Witness answered, "I never dreamed of anything else. Q. Well, did he (appellant) ever deny that to you? A. Oh, never. Q. Or did he ever claim to you that Mr. Zuber didn't have any interest in it? A. No, no." Further on the witness stated that the appellant furnished appellee half of the money at six per cent. to purchase the land, under an iron-clad agreement that appellant would carry the appellee, so that appellee would not have to go outside to get the money. The iron-clad agreement witness referred to was a "gentlemen's agreement." Witness didn't know of any agreement in writing between the parties. It was a verbal agreement. Witness was under the impression, from his conversation with the appellant, as well as with the appellee, that it was a company orchard. Witness knew the appellee to be a man on the square, who could go out in Little Rock and get the money, and who would carry out his agreement.

Kelley testified that he was a lawyer. He had no interest in the subject-matter of the litigation. His opinion concerning the agreement between the appellant and the appellee as to the purchase of the land in controversy came from a statement made by them in his presence about the middle of July, 1923. Witness, at the appellee's request and in his interest, went with him to see the appellant. Witness penciled the memorandum of

the agreement as it was stated by the appellee and admitted by the appellant. Appellee stated that he could pay his half of the purchase price the next day if necessary, as he did not intend to lose his half interest. It was agreed that this was not necessary, as appellee's half of the purchase price and the expenses would be taken from the returns of the fruit crop, and the balance was to be divided *pro rata* between them, and thereupon the appellant was to make the appellee a deed to appellee's half interest in the property. It was agreed that appellant should furnish the appellee the money at eight per cent., and appellee should repay him and attend to the orchard. It was stated in the conversation that it was the previous agreement between the parties that each should have a half interest in the property. Appellant admitted that the property was purchased in that way. The appellee and the witness had made arrangements to borrow $1,500 cash from Mr. Sterling Tucker, president of Fones Hardware Company, to pay appellee's part of the purchase money. Witness jotted down a statement of the prior agreement reiterated that day, for the purpose of future reference. At the time of this conference one carload of peaches was ready for shipment, and the parties estimated that there would be eleven or twelve cars.

Lee Cazort testified that he was acquainted with the parties to the action; that he was in appellant's office about the first of June, 1923; that he went there to carry a piece of a spraying machine that appellee had asked him to bring down. Witness and appellant conversed for some time about the orchard. Appellant stated that he and appellee had bought the orchard in partnership. The details of the transaction he did not relate to the witness. Witness understood from the conversation that appellant and appellee had bought the orchard jointly. In another conversation with appellant, the day before witness testified, appellant stated to witness that the appellee had no interest as a partner; that they had only bought the crop together.

The appellant categorically denied the testimony of the appellee and his witnesses as to the purchase of the land jointly by appellant and the appellee. The appellant testified that he alone purchased the land and paid for it; that appellee had nothing to do with the purchase. There was no agreement between them as to the place whatever. The appellee agreed to go down and look after the spraying and cultivation of the peach crop. He was to be paid for this work in proportion to the money he put up. He was not to receive any interest in the property, but only an interest in the net proceeds of the crop, if there were any. If there had been no net proceeds, then appellant and appellee would have lost what they spent on the crop. Appellant reimbursed appellee for what he put in, and appellant owed him about ten per cent. of the net proceeds. Appellee gave the correct figures as to the proceeds of the crop. The appellee did not faithfully perform his contract to look after the spraying and cultivation. The orchard was not properly cared for; it did not get the proper spraying during the month of May. Appellant sent his son down on June 6, 1923.

The testimony of appellant's son, and also of a witness by the name of Oscar Raines, who was in the employ of the appellant, in looking after the orchard, corroborated the testimony of the appellant to the effect that the appellee did not properly spray the orchard; that, on account thereof, the orchard did not yield the crop it would have done had it been properly sprayed.

The court found that the appellant and the appellee, on the first of April, 1923, associated themselves together as partners for the purpose of buying the land in controversy and that they did so purchase the land; that the deed, on the 19th of April, 1923, was executed to the appellant, and he was vested with the legal title in trust for the partnership; that it was agreed that each should own a half interest in the land; that appellant paid the purchase price for $3,000 and loaned the appellee $1,500 to pay his part of the purchase price, on which appellee

was to pay interest at the rate of eight per cent. per annum; that the crop for the year 1923 netted the sum of $4,900, and that the appellant owed the appellee $2,450, with interest, of $41.08, leaving a balance due the appellee, with interest, from the date of the decree in the sum of $884.27. The court thereupon entered a decree in favor of the appellee against the appellant for that sum, and declared the same a lien on the real estate described in the complaint, and decreed that the partnership be dissolved and that the lands mentioned in the complaint be sold and the proceeds be equally divided between the parties; that appellant pay the expenses and costs and also pay the appellee the sum of $884.27 out of his half of the proceeds of the sale. From that decree is this appeal, and the appellee cross-appeals.

1. The appellee, by the allegations of his complaint and the testimony adduced in his behalf, seeks to establish an interest in certain lands described in his complaint, which he claims were purchased under a contract of partnership between appellant and appellee by which the appellant was to take the title in his own name for the benefit of himself and appellee as equal partners. The appellant, in his answer, specifically denies that there was any such contract.

In *Stanford* v. *Sager,* 141 Ark. 458-466, we said: "Where a defendant in his answer denies making the contract which plaintiff declares on and seeks to have specifically performed, it is not necessary in such case for the defendant to specifically plead the statute of frauds, for the reason that it devolved upon the plaintiff to show that he had a valid contract as alleged." We cited the cases of *Wynne* v. *Garland,* 19 Ark. 23, and *Trapnall's Admr.* v. *Brown,* 19 Ark. 39. In the latter case we held, quoting syllabus: "Where the defendant denies the agreement or contract relative to the real estate alleged in the bill, it is not necessary for him to insist in his answer upon the statute of frauds as a bar."

Taking the allegations of the complaint as a whole, it was tantamount to an action for a specific perform-

ance of an alleged partnership agreement by which the appellant and the appellee were to purchase a certain tract of land in Pike County, Arkansas, as partners, and operate and cultivate the same as such. The complaint, in effect, alleged that the contract had been performed in part by the purchase and cultivation of the lands, but that the appellant refused to further carry out the partnership agreement by recognizing appellee's right and title to a half interest in the land as well as in the net proceeds of the fruit crop produced thereon; and appellee prayed in effect that the chancery court require appellant to complete the performance of his contract by an accounting and a sale of the lands, and that the appellant be required to pay over to appellee a half interest of the proceeds from the sale of the lands, and also that appellee have a decree for his half interest in the net proceeds of the fruit crop, and that this decree be declared a lien upon the appellant's half interest in the land. The appellant, having denied specifically in his answer that there was any contract of partnership for the purchase of the land in controversy, it was unnecessary for him to plead the statute of frauds, because it devolved upon the appellee to prove that the alleged contract was in writing under which he claims the appellant had agreed to advance the purchase money for the joint benefit of himself and the appellee, in order to establish his title to a half interest in the land. The contract, so far as appellee's alleged half interest in the lands is concerned, was clearly within the statute of frauds, and the appellant, under the issue raised by the pleadings, as well as the proof, had a right to avail himself of the statute. There is no testimony in this record to warrant a finding that the parties had entered into a contract of partnership for the purchase of the land in order to share in the profits and resale of the land itself. There is nothing to show that the parties contemplated a resale of the land. According to the testimony of the appellee himself, they were to own the land jointly and to share as partners in the operation and cultivation of the land.

The case therefore does not fall within the doctrine of *Beebe* v. *Olentine,* 97 Ark. 390, so as to remove the case, as far as the ownership of the land is concerned, out of the operation of the statute of frauds. In the case of *Schultz* v. *Waldons,* 60 N. J. Eq. 71, 47 Atl. 187, it is held that: "Where there is no previous partnership or joint enterprise between two parties, A and B, and they agree, by parol, that B shall purchase and take title in his own name to a single piece of real estate, and hold the same for the benefit of both, and A contributes no money to the enterprise, and there is not written proof of the contract, the statute of frauds prevents A from successfully claiming an interest in the land." See also *Scheuer* v. *Cochem,* 126 Wis. 209, 4 L. R. A. 427, and case note in which the above case of *Schultz* v. *Waldons* is cited, and also the leading case on the subject of *Smith* v. *Burnham,* 3 Sumn. 435, Federal Cases No. 13,019. See also *McClintock* v. *Thweatt,* 71 Ark. 323.

Now, there was no previous partnership between the appellant and the appellee for the purchase and sale of lands and to share equally in the profits from such transaction. There were no partnership funds created for that purpose. On the contrary, the purchase of the land was the first and only transaction for which it is alleged the partnership was formed. The evidence is not sufficient to establish a partnership, so far as the ownership of the land is concerned, so as to take the case out of the statute of frauds. See *Nestor* v. *Sullivan,* 111 N. W. (Mich.) 85, 9 L. R. A. 1106; *Norton* v. *Brink,* 110 N. W. (Neb.) 669, 7 L. R. A. 945.

2. Nor, under the facts of this record, can it be said that the appellee had established a resulting trust in his favor to an undivided half interest in the lands. The most that the appellee's own testimony proves in regard to the purchase and ownership of the real estate is that he and appellant were to purchase the land jointly as partners; that appellant was to advance the money to pay appellee's half of the purchase price, for which he was to pay interest at the rate of eight per cent.; that the

land was purchased in appellant's name and with his money, and that the deed was taken in appellant's name; that appellee executed no note or other written obligation to appellant for his half of the purchase money. At one place in his testimony the appellee, in answer to a question, stated that he did not claim that appellant actually loaned him the money to pay his half of the purchase price of the land. Appellant paid the purchase price, and the appellee was to repay him, with interest from his half of the net proceeds of the crop of 1923. It will thus be seen that the appellee neither paid any money nor entered into any written obligation evidencing a contract to pay money to the appellant for his alleged half of the purchase price before or at the time the deed to the appellant was executed; nor was there any agreement between them to the effect that appellant, when the deed was taken in his name, should have a lien on appellee's alleged half interest in the lands as security for the money alleged to have been advanced by appellant for the appellee. The appellee himself testified that he was only under a *moral* obligation to pay out of his half of the proceeds of the crop. Such security was *in futuro et nubibus*, and was no security at all. This testimony was not sufficient to constitute a resulting trust in favor of the appellee to an undivided half interest in the land.

In *Reeves* v. *Reeves*, 165 Ark. 505, it is said: "In order to constitute a resulting trust, the purchase money, or a specified part of it, must be paid by another, or secured by another, at the same time or previously to the purchase, and must be a part of that transaction." See also *Pumphrey* v. *Furlough*, 144 Ark. 219; *Bland* v. *Talley*, 50 Ark. 71. A succinct statement of the doctrine is found in *McGovern* v. *Knox*, 21 Ohio St. 547-552, where it is said: "The foundation of a resulting trust is the payment, or the securing to be paid, by the *cestui que trust*, out of his own means, [of] the consideration of the conveyance, or some part thereof, at its completion." 15 Am. & Eng. Enc. (2nd. ed.) p. 1145; *Furber* v. *Page*, 143 Ill. 622; *De Roboam* v. *Schmidtlin*, 50 Ore. 388.

3. It does not follow, however, that, because there was no resulting trust in favor of the appellee for an undivided half interest in the lands and no enforceable contract of partnership between the appellant and appellee whereby appellee had title to an undivided half interest in the land in controversy, there was likewise no enforceable contract of partnership between appellee and appellant whereby the appellee was entitled to a half interest in the net profits of the products of the land for the year 1923. The contract was a severable one. See *McClintock* v. *Thweatt, supra.* As we have seen, the statute of frauds precludes the appellee from enforcing the alleged contract of partnership by which he was to acquire an undivided half interest in the fee to the lands in question. But the trial court found, not only that there was a partnership entered into between the parties for the purchase of the land, but also that "it should be cultivated and operated by the partnership for the joint benefit of both parties." We are convinced that these findings of fact are sustained by a preponderance of the evidence, and that the contract is enforceable as to the operation and cultivation of the land.

In *Personette* v. *Prynne,* 34 N. J. 26, it is held that a parol agreement of partnership for working lands is not within the statute of frauds. In *Everhart's Appeal,* 106 Pa. 349, it was alleged that there was a partnership business in the buying and selling of lands for the purpose of carrying on a farm, and the prayer of the complaint was that one of the alleged partners be required to account to the other for a "one-half part of the net profits and gains arising from said business and to convey one-half part of the lands remaining unsold." The court held that one of the partners could not establish his interest in the lands by parol evidence, where the statute of frauds was set up, requiring agreements relating to lands to be in writing, and further held that that rule did not apply to an agreement for a division of the profits arising from a sale of the lands so purchased by the partnership. We have recognized this doctrine where

there was a partnership established for the purchase and sale of lands. *McClintock* v. *Thweatt, supra; Beebe* v. *Olentine, supra.* In both these cases we held that a contract of partnership to *divide the profits* arising from the sale of lands was not within the statute of frauds, and could be enforced. The doctrine of the above cases is applicable here to that part of the complaint of the appellee which seeks an accounting and a specific performance of the contract to divide the profits arising out of the cultivation and operation of the lands in controversy during the year 1923. See also *Bates* v. *Babcock,* 16 L. R. A. 745, and cases cited in note. The authors of the note in that case, speaking of an oral agreement for a partnership in the *profits* of buying and selling real property, say: "As a rule, contracts for such partnership are held valid, and all suits recognizing the existence of the partnership and seeking relief, which may be legitimately sought by a partner, are upheld, while, on the other hand, parol contracts for an interest in land are ignored and suits brought to enforce them dismissed, although they may constitute a part of the partnership agreement."

The trial court found, and the finding is sustained by a preponderance of the evidence, that the net profits accruing to the partnership from the peach crop produced on the land for the year 1923 was the sum of $4,900, and that therefore appellant was due the appellee the sum of $2,450 for his share of such crop, and that appellant should have paid to the appellee his proportion of the profits not later than September 1, 1923. While this is not an action for the profits derived from the partnership in the buying and selling of lands, it is an action for the profits derived from a partnership in the operation and cultivation thereof. If an accounting for the former is authorized, and it is according to the doctrine of the above cases, then, *a fortiori,* is an accounting in the latter authorized.

It follows that the trial court erred in entering a decree the effect of which was to hold that the appellee had an equal interest with the appellant in the lands in

controversy and in directing an accounting between the parties pursuant to such holding. The trial court instead should have entered a personal decree in favor of the appellee against the appellant for his half interest in the net profits from the peach crop of 1923, which, according to the testimony abstracted by counsel for both parties, was the sum of $4,900. The decree therefore should have been in favor of the appellee for the sum of $2,450, with interest at the rate of six per cent. from the first of September, 1923. The decree is therefore reversed, and the cause will be remanded with directions to enter a decree in accordance with this opinion.