CARROLL *v.* KESSINGER.

5-1413                                          307 S. W. 2d 880

Opinion delivered December 23, 1957.

*Shelby Blackmon* and *Frank J. Wills,* for appellant.

*H. B. Stubblefield,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Leroy Carroll, originally brought this suit to divest an undivided one-half interest in 40 acres of land

out of L. A. Kesinger and World Gospel Mission, Inc., and vest it in him pursuant to an alleged oral contract between the appellant and Kessinger, who will be referred to as appellee. It was alleged that during negotiations for the purchase of the land, appellee fraudulently led appellant to believe that he was purchasing the property for them as tenants in common in accordance with their oral agreement; and that upon completion of the purchase appellee refused to convey to appellant his half interest although the latter was ready and able to pay half of the purchase price and expenses of sale.

The chancellor properly sustained appellee's demurrer to the original complaint on the ground that its allegations disclosed an alleged contract within the statute of frauds, but appellant was allowed 15 days to plead further. An amendment to the complaint was then filed alleging the land was purchased pursuant to an oral partnership agreement between the parties to buy the 40 acres and any other lands that could profitably be resold; and that appellee breached the agreement by conveying the property to World Gospel Mission, Inc., without consideration. The new prayer for relief was that title to the 40 acres be vested in the parties as partners upon appellant's payment of half the purchase price and acquisition costs; and that said partnership be wound up if they could not continue the venture. Appellee answered after his demurrer to the amended complaint was overruled and the case proceeded to trial. The court also overruled appellee's demurrer to the evidence presented by appellant. This appeal is from a decree finding the issues in favor of appellee at the conclusion of all the proof, and dismissing the complaint for want to equity.

Appellant lives in Sylvan Hills, a suburb of North Little Rock, Arkansas, and appellee lives in Little Rock. They have known each other for several years and occasionally have hunted together. In 1955 there was some discussion between them about the purchase of lands near the right of way for the new highway between Jacksonville and North Little Rock. Appellant telephoned

appellee on August 29, 1955, and asked him to come out and look at a 40-acre tract owned by C. D. Ulrich. Appellee drove to appellant's home where Ulrich was introduced to him and the three men inspected the property. Appellee and Ulrich then drove to Little Rock where they executed an "Offer and Acceptance" for sale of the land to appellee for $8,000.00 payable in annual installments dating from a conveyance to be executed when certain title defects were cleared. A second similar agreement was executed by them on November 14, 1955; and on February 14, 1956, Ulrich executed his deed to appellee in accordance with their written agreement. On the same date appellee and his wife conveyed the land to World Gospel Mission, Inc., with the latter assuming payment of the unpaid balance of the purchase price in the amount of nearly $6,000.00.

The evidence concerning any partnership arrangement, or other agreement whereby appellant was to be interested in the purchase of the land by appellee, is in sharp dispute. According to appellee it was understood throughout the negotiations that he was buying and paying for the land for himself. He testified that both before and after execution of the agreement to purchase on August 29, 1955, he told appellant it was all right to buy the land himself or with appellee but he refused, stating he was land poor and could not put up the money. According to appellant and his wife the parties talked about buying the land "fifty-fifty" and agreed to do so. The parties also talked to James G. Hill who lived in the vicinity about the purchase of another tract and he testified that appellee told him there was a partnership agreement. Appellant and Ulrich had been neighbors for 30 years. Appellant also testified he told Ulrich about the partnership arrangement but this was denied by Ulrich, who stated that appellant had never attempted to buy the land nor made any claim of any interest in the transaction to him.

Appellant called appellee again in February, 1956, and stated that new surveys had been made showing the 40 acres closer to the new highway and much more valuable, than originally expected and asked appellee

to come out. Appellee testified that after again viewing the property appellant wanted to buy the most valuble 10 acres immediately adjacent to the new road for $2,000.00 but appellee refused to sell it to him. This testimony was not specifically denied by appellant who had previously stated that appellee did not then tell him how much money appellant should put up but indicated that he would see him about it later. It is not contended that appellant ever actually tendered any part of the purchase price and acquisition costs; and there is little to indicate the parties contemplated a resale of the property jointly.

In support of his contention for reversal appellant cites several cases to support the proposition that an oral contract of partnership for the purpose of buying lands jointly and divided the profits is not within the statute of frauds. In finding the issues in favor of appellee the chancellor perhaps did not reach this question, and neither do we. Before appellant could prevail under the rule, and take the case out of the statute, the burden was upon him to establish the partnership. In our opinion a preponderance of the highly conflicting evidence simply does not support the conclusion that a partnership was established. As we have frequently held: "In order to constitute a partnership, it is necessary that there shall be something more than the joint ownership of property. A mere community of interest by ownership is not sufficient. This creates a tenancy in common, but not a partnership." *LaCotts* v. *Pike*, 91 Ark. 26, 120 S. W. 144. See also, *O'Bryan* v. *Zuber*, 168 Ark. 613, 271 S. W. 347. As we view the evidence, the chancellor could have justifiably found it insufficient to even establish an agreement for joint ownership of the property by the parties. The decree is accordingly affirmed.