# Thompson *versus* Sheplar.

1. An action lies on a parol contract for the sale of land.

2. In the absence of fraud, the measure of damages is the money paid and expenses incurred on the faith of the bargain. If no consideration has been paid or expenses incurred, the damages are nominal.

3. Where there has been fraud in the sale, damages are recoverable for the value of the bargain.

4. The defendant agreed to purchase plaintiff's land which was to be sold at sheriff's sale, and reconvey to plaintiff if paid the purchase-money and interest in a year. In an action for damages for refusal to convey, the court charged that if defendant "in bad faith refused to perform his agreement to reconvey," &c., the measure of damages would be the difference between the value of the land and price paid for it by defendant. *Held,* to be error.

October 16th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 96, to October and November Term 1871.

This was an action on the case brought April 1st 1865, by Philip Sheplar against Moses B. Thompson.

Pending the suit the plaintiff died and M. G. Sheplar, his administrator, was substituted as plaintiff.

The declaration was that Philip Sheplar being the owner of a tract of land of the value of $12,000, it was taken in execution by the sheriff, and advertised to be sold on the 28th of July 1862;

[Thompson v. Sheplar.]

the defendant promised the plaintiff that he, the defendant, would bid for the land at the sheriff's sale, and if he purchased it, would convey it to the plaintiff on his paying him the amount for which it should be sold to him, within one year from the purchase, "with ten per cent. interest thereon:" that in pursuance of the agreement the defendant purchased the land for $2500, which was much below its value, and that within a year after the purchase, the plaintiff tendered to the defendant the sum of $2500, with ten per cent. interest, and demanded a conveyance; that the defendant "fraudulently intending to injure," &c., the plaintiff would not receive the said sum and interest, nor convey the land to the plaintiff, &c.

The case was tried December 24th 1870, before Stowe, J. The land was sold, on the 28th of July 1862, by the sheriff to defendant for $2500, under an execution at the suit of S. B. W. Gill.

For the plaintiff, J. H. Hopkins, Esq., testified that shortly previous to the sale there were some negotiations for the purpose of preventing the sheriff's sale of the plaintiff's property; that it was finally agreed that the sale should go on, the defendant to become the purchaser, and give Sheplar one year within which to redeem the property by paying the purchase-money and ten per cent. interest. Mr. Hopkins proved the tender about the 21st of July 1863, by Sheplar to Thompson, of the amount of the purchase-money and interest at ten per cent., and demand of a conveyance of the land to Sheplar.

Henry Sheplar, a brother of Philip Sheplar, was offered as a witness. He had, on the 14th of June 1867, recovered a judgment for $977 against Martin G. Sheplar, administrator of Philip Sheplar, deceased: on the 21st of December 1870 he assigned this judgment to John P. Sheplar "without recourse." He testified on his *voir dire* that besides this judgment he had an interest under his father's will, by which a farm was devised to Philip Sheplar, subject (amongst other things) to the payment of $400 to witness, which is unpaid.

The defendant objected to the admission of Sheplar as a witness "on the ground of interest and because he is an assignor of a claim in action." He was admitted and a bill of exceptions sealed for defendant.

He testified that shortly before the sheriff's sale, Philip Sheplar told Thompson that if he would pay the amount of the judgment, he would redeem the property within twelve months; would pay the money back with ten per cent. interest; if he did not, the property. was to be Thompson's; the property was to be sold by the sheriff and Thompson was to bid it off. On the day of the sale, Thompson, in answer to a question of witness, said he would adhere to the contract; the property was struck off to Thompson for $2500. Witness also testified that he was at the sheriff's sale,

22 P. F. Smith—11

[Thompson *v.* Sheplar.]

and was prevented from bidding by Thompson's promise, but for which he would have bid $3500.

There was other evidence to the same effect as that above given; including evidence that other persons would have interfered to stop the sale, except for Thompson's promise to buy the property for Sheplar.

There was evidence also that Thompson was requested to put the agreement into writing but declined; and that after the sale he denied that there had been any such agreement. There was evidence also that when Thompson was spoken to before the sale, he expressed friendship for Sheplar and a desire to aid him: also that after the sale he had said that if Sheplar redeemed the place in a year by paying the purchase-money and ten per cent. interest, it was to be reconveyed to him: also that when Sheplar had spoken to him, in June 1863, after the sale, in relation to his agreement to reconvey, he said he could not remember the contract; he said "if you have got gold, the contract will be lived up to;" gold at that time was at a premium of 148 per cent.

There was evidence also as to the value of the property, and that Thompson took and held possession.

There were a number of rulings by the court below on questions of evidence, to which exceptions were taken.

The plaintiff's points which were affirmed, were :—

1. If the jury are satisfied, from the evidence, that Thompson, in bad faith, refused to perform his agreement to reconvey the land to Philip Sheplar, when tendered within the year, the $2500 he had paid and ten per cent. interest, the plaintiff will be entitled to damages, and the measure of damages he will be entitled to recover will be the difference between the value of the land when the tender was made and the $2500 paid by Thompson, with interest upon that difference from the date of the tender to this time.

2. If Thompson, at the time he agreed with Sheplar to buy the land at sheriff's sale, and give Sheplar a year to redeem it, fraudulently intended not to perform the agreement, and to take an undue advantage of Sheplar, the plaintiff will be entitled to recover damages for the breach of the agreement, and the measure of damages will be the difference between the value of the land when the tender was made and the money paid by Thompson, and also to interest on that difference to this time.

The defendant's 8th and 9th points, which were refused, were :—

8. If the jury are satisfied, from the evidence, both that the alleged agreement to reconvey was, in point of fact, made by defendant, and that the arrangement was not fraudulently designed by Sheplar to cheat his creditors, and should find a verdict for the plaintiff, they must fix the amount of said verdict by the amount of actual expenses incurred by the said Sheplar in endeavoring to have the contract carried out, and that they

are not to include in their verdict any allowance for the supposed loss of a bargain.

9. Under the pleadings and evidence, the plaintiff cannot recover any supposed or alleged difference between the value of the land at the time of the tender and the amount tendered unto defendant, but can only recover the actual expenses to which Sheplar may have been put by Thompson's failure to comply with his alleged agreement, and that as the plaintiff has failed to prove any such expenses, he can recover, if at all, only nominal damages.

The defendant's 10th and 11th points were:—

10. The mere failure of the defendant, though without any good reason or though not prevented by any cause beyond his own control, to comply with his parol contract, is not, of itself, such an act of fraud as would subject him to any higher standard of damages than that indicated in said 8th and 9th points, to wit, the actual expenses incurred by Sheplar.

11. The fraud that would authorize the application of any other measure of damages than that indicated in said 8th and 9th points must have been fraud meditated and designed at the time of the purchase by Thompson, and must be indicated by what took place before and at the sale, and cannot be found or presumed by the jury upon the mere fact of the promise alleged, and its subsequent non-performance ; and that there is no such evidence in the case as would justify the jury in finding any design or intent upon Mr. Thompson's part, at the time of said purchase, to defraud said Sheplar.

The answers to these points were:—

"10. This point is refused, if you believe the amount paid at the sheriff's sale was not a fair and reasonable price for the land at the time of sale, or as it was at the time it should have been reconveyed to plaintiff, Philip Sheplar. In other words, if you believe the land was bought by defendant for a price actually and substantially less than its fair value, and defendant, influenced by the fact that the land was worth more than the amount to be paid for its reconveyance, refused to convey when tender was made, or if you believe that the land was worth more, and known to be so by defendant, than the amount of the tender at the time it was made, and for that reason defendant refused to reconvey, the plaintiff is entitled to recover the difference between the value of the land at the time of the tender and the amount paid by defendant, with ten per cent. added, to wit, $2750. But if you believe that the land was not actually and substantially worth more than the amount paid by defendant, and had not become decidedly of more value before the time of tender, then this point is affirmed.

" A man's neglect or refusal to perform a contract to convey

[Thompson *v.* Sheplar.]

lands, as a general rule is no ground, without something more showing a fraudulent intent, to justify a jury in giving more than the actual damage sustained by the party complaining of the breach of such contract. But where there is actual fraud in the inception—at and preceding the actual agreement of the contract, which must be sufficiently shown by the evidence in the case showing an actual intent existing in the minds of the party at the time to act dishonestly or fraudulently, the rule is different and larger damages may be recovered.

" But in a case such as this is claimed to be by plaintiff's attor-. ney, where a man makes a contract with another by which the other gets possession of property for much less than its value, upon the agreement made at the time the arrangement is consummated, to restore the property for the amount paid, or that amount with an additional compensation less than its actual and known value; this is such a case as will justify the jury in giving the difference between the value and the amount to be paid on its restoration.

" 11. This point is answered in our answer to the 10th point.

The court said, also :—

" Then do you believe that the contract was made as claimed by plaintiff—that plaintiff Sheplar, and defendant Thompson, agreed together, in view of the position Sheplar's property was in at the time, that defendant would purchase the land levied upon, at the sheriff's sale, and give him, Sheplar, the property back, upon the payment of the amount paid, with 10 per cent. added, within a year, and that said amount was duly tendered within the time limited in the agreement; and if you further believe, from the evidence, that this arrangement was the reason Sheplar did not get some other person to release him from the impending loss of his property at the approaching sale, then plaintiff can recover in this suit, and the proper standard of damages has been already indicated in our answer to defendant's point—to which you will add interest."

The verdict was for the plaintiff for $6358.

The defendant removed the case to the Supreme Court by writ of error, and assigned for error the rulings on questions of evidence, the answers to the points and the charge.

*G. Shiras* (with whom was *D. D. Bruce*), for plaintiff in error. —As to the admission of H. Sheplar as a witness, cited Haus *v.* Palmer, 9 Harris 296; Graves *v.* Griffin, 7 Id. 176; Post *v.* Avery, 5 W. & S. 509; Karns *v.* Tanner, 16 P. F. Smith 297.

*R. Woods* and *N. P. Fetterman*, for defendant in error.—H. Sheplar's interest being collateral, the rule in Post *v.* Avery does not apply: Forrester *v.* Kline, 14 P. F. Smith 29; Steininger *v.*

Hoch, 6 Wright 432 ; Cornell v. Vanartsdalen, 4 Barr 364 ; Byers v. Mullen, 9 Watts 266 ; Jones v. Brounfield, 2 Barr 55. A creditor may assign and become a witness: Carter v. Trueman, 7 Barr 315 ; Dutton v. Tilden, 1 Harris 46 ; Montgomery v. Grant, 7 P. F. Smith 243.

The opinion of the court was delivered, May 17th 1873, by

WILLIAMS, J.—It is well settled law in this state that an action will lie on a verbal agreement for the sale of land, and, in the absence of fraud, that the measure of damage for its breach is compensation for the money paid and expenses incurred on the faith of the bargain. If no consideration has been paid, and no expenses incurred, only nominal damages are recoverable. But where there has been fraud in the sale, a different rule as to the measure of damages obtains. In such cases it has been uniformly held that damages may also be recovered for the loss or value of the bargain. But if no fraud was meditated and designed in making the contract, the refusal to perform it is not such fraud as will enable the vendee to recover compensation for the loss or value of the bargain. If damages for such loss were allowed to be recovered for the breach of the contract, on the ground that the refusal to perform it was in itself a fraud, it would, in most cases of parol sales, operate as a virtual repeal of the Statute of Frauds ; for, though the vendee might not recover the land for which he bargained, of what avail would be the statute if he could recover its value in money ? It is obvious that such a recovery would, in almost every case, be equivalent to specific performance. It follows that the court below erred in affirming the plaintiff's first point, and in the instructions given to the jury in answer to the defendant's tenth and eleventh points. But there was no error in refusing to charge as requested in the defendant's eleventh point. If the proposition set out in the first clause of the point had stood by itself, it should have been affirmed, but taken in connection with the assumption in the later clause, that "there is no such evidence in the case as would justify the jury in finding any design or intent upon Mr. Thompson's part, at the time of said purchase, to defraud said Sheplar," it would have been error to affirm it. There was abundant evidence, if believed, to justify the jury in finding that Thompson was a trustee, *ex maleficio ;* and if so, the plaintiff was entitled to recover as damages the difference between the amount of the tender and the actual value of the land at its date. But as the question of the defendant's alleged fraud in making the purchase was not submitted to the jury, the judgment must be reversed, and the cause sent back for another trial.

There was no error in the admission of Henry Sheplar as a witness ; and there is nothing in the other assignments that re-

quires discussion.    The defendant's second, fifth, sixth, eighth and ninth points were properly refused.

Judgment reversed, and a *venire facias de novo* awarded.