# Everhart's Appeal.

106  349
141  112

106  349
206  599
106  349
f221  '626

1. Where a partnership is formed for the purpose of buying and selling lands, one of the partners cannot establish his interest in such lands by parol evidence, where the other sets up the Statute of Frauds requiring agreements relating to lands to be in writing.

2. But that rule does not apply to an agreement for a division of profits arising from the sale of lands so purchased by the partnership.

3. Maffitt's Adm'r v. Rynd, 19 P. F. S., 380; and Benjamin v. Zell, 4 Out., 33, approved.

[Everhart's Appeal.]

4. Upon a bill by a partner against his co-partner for an account, it having been shown that a principal part of the business of the partnership was the purchase and sale of lands, the complainant proved by parόl evidence that after a purchase of lands for the partnership account, and a sale thereof at a large profit, the defendant, after the consummation of the sale and the receipt by him of the entire proceeds, declared to various parties that his partner had an interest in said proceeds, and that he promised his partner to pay over his share thereof:

    *Held*, that the complainant was entitled to an account and a decree for his proportion of said proceeds.

5. The Statute of Limitations must be set up as a defence by a respondent in an equity suit at an early stage of the cause. After a cause had been referred to a Master on bill and answer, and the Master had filed a report and a supplemental report, to which the defendant had filed exceptions which were pending eight years after the filing of the bill, it is too late for the defendant to obtain leave to interpose the bar of the Statute.

6. An evasive answer to a bill in equity, not responsively denying the material averments of fact, but disputing their legal effect, is not within the rule requiring two witnesses, or one witness and corroborating circumstances to outweigh the effect of a responsive answer.

April 16, 1884.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Luzerne county :* In Equity : Of July Term, 1883, No. 75.

This was an appeal by John T. Everhart from a decree of said court sustaining a bill in equity filed by James M. Everhart against John T. Everhart, his brother, and requiring the defendant to pay to the plaintiff the sum of $37,878.27, with interest, and to transfer to him 1666 shares of stock of the Everhart Coal Company, of the par value of $12.50 per share.

The bill, filed June 23, 1874, set forth, in substance, that in the year 1853 the plaintiff and the defendant entered into a partnership, at Pittston, Pa., for the purpose of carrying on a farm, and for buying and selling lands in Luzerne and other adjoining counties, the terms of the partnership agreement being that the plaintiff should superintend and direct the farm aforesaid, and do such other business as occasion might require connected with the partnership, and receive one half part of all profits realized and accruing out of said business of farming and buying and selling lands, and share one half the losses that might accrue, and that the business should be conducted in the name of John T. Everhart; that since that time up to about two years ago, the plaintiff has faithfully performed and attended to all his share and portion of the said business ; that large purchases and sales have been made and large profits have accrued from such sales, and from the proceeds of the farm aforesaid, most of which have been paid

to and absorbed by the said John T. Everhart; that among the lands thus bought and some of which have been sold, are the following tracts. (Here the plaintiff named each tract, and the number of acres contained therein.) That no settlement or adjustment of said business has ever been made between the plaintiff and the said John T. Everhart, although the said John T. Everhart has been often requested and hath often promised the plaintiff to make such settlement and adjustment; that the plaintiff firmly believes the said John T. Everhart does not intend to settle with or pay this plaintiff the several sums of money due him.

The prayer of the bill was: " That a decree of this honorable court may be made, compelling the said John T. Everhart to account to and with your orator for the profits and losses of the said business thus carried on since the year 1853, and pay over to your orator one half part of the net profits and gains arising from said business, and to convey to your orator one half part of the lands remaining unsold."

A demurrer to the bill was overruled, whereupon the defendant filed the following answer:—

1. In answer to the bill of complaint filed in this case, I, John T. Everhart, the defendant, say as follows, viz: I deny that any contract of partnership such as set forth in the first paragraph of complainant's bill was ever legally made between us.

2. I have bought and sold lands during the time mentioned in the bill, but solely on my own account, and not on account of complainant, and I expressly deny that he has any right, title or interest therein, whereby he can legally call upon me to account to him for the same.

The cause was referred to a Master (G. R. Bedford, Esq.), who, in his report, after commenting upon the terms of the above answer, reported that " the preponderance of evidence is in favor of the plaintiff and establishes the truth of the allegations of the bill, providing the evidence be admissible." He further reported that, the testimony relating to the partnership rested wholly in parol, and, the defendant having interposed the objection of the Statute of Frauds the plaintiff could not enforce the same generally as to interests in lands purchased; that, however, in the case of certain lands purchased under the partnership and sold to the Everhart Coal Company, the defendant had by his declarations subsequently to said sale, acknowledged the plaintiff's right to share in the profits, and agreed to pay over his share. The Master reported that as to such converted proceeds the Statute of Frauds did not apply, and the plaintiff was entitled to an account of said sales and profits. Also that the plaintiff was entitled to an

account of the farming operations, as the partnership agreement relating thereto did not involve the title to land.

Exceptions filed by the defendant to the Master's report were dismissed by the court (HANDLEY, P. J.) and the cause having been referred back to the Master to state an account, he filed a supplemental report showing the sum of $12,494,52 to be due by defendant to plaintiff on the farm account; and also, 1666 shares of the capital stock of the Everhart Coal Company of the par value of $12.50 per share, as representing the plaintiff's share of the stock received by defendant on sale of said lands to the Everhart Coal Company. The Master did not include, in the account stated, any share of the cash received by defendant on said sale.

Both parties filed exceptions to the supplemental report, and it was referred back to the Master by the court (WOODWARD, J.,) with instructions to include in the account the plaintiff's share of said cash proceeds.

The defendant then moved (1) that the Master be directed, upon said recommitment "to take into consideration and report on all the evidence presented before him by both parties, and restate · his account accordingly. (2) For leave to amend his answer by interposing the Statute of Limitations with the same effect as it originally pleaded.

The Master afterwards filed a second supplemental report, whereby in addition to the cash sum found due· the plaintiff by the original report, the further sum of $25,384.75 was reported to be due as the plaintiff's share of said cash proceeds, with interest to December 15, 1881.

The defendant filed with the Master exceptions to said supplemental report, which the Master dismissed, saying: "The parties have already been fully heard both before the court and the Master, and the duties of the latter under this reference are simply ministerial. The first suggestion of a defence in analogy to the statute of limitations was made on the argument. It was not raised by plea, by objections to the admissions of testimony, nor by exceptions to my report stating the account. It cannot be considered now."

On March 12, 1883, the court (WOODWARD, J.,) filed orders dismissing the two motions of defendant as above and entered a decree as reported by the Master in his second supplemental report.

The defendant then moved to strike off said decree, on the ground that it was prematurely and irregularly entered. The court dismissed this motion, WOODWARD, J. saying, in an opinion filed:

" We are now asked to hold, that the Master erred in making his supplemental report, while the motions of 2d October,

1882, were pending. It does not appear however, that any order staying the proceedings of the Master until these motions were disposed of was ever granted or asked for, or that he had any notice whatever of their existence in the case; nor, as we said before, does it appear, that the defendant's exceptions to the Master's supplemental report, made any reference to the pendency of these motions. It was the duty of the Master to make and file his supplemental report, in pursuance of the order of the court, and this duty be performed.

"When we made the order overruling the exceptions and confirming the report of the Master, we did so with full knowledge of the pendency of the motions of 2d October, 1882. They had been argued and submitted, and the confirmation of the report was a practical overruling of the motions, although the formal decree to that effect was not entered until 12th March, 1883, or contemporaneously with the final decree in the case.

"In conclusion we will add, that as this case has now been in court nearly nine years, we are disposed to think that the time has arrived for a decree which in form at least shall be 'final.' The motion to strike off the final decree of 12th March, 1883, is denied. The motion to strike off the confirmation of the Master's supplemental report is also denied."

The defendant thereupon took this appeal, and filed the following assignments of error:—

The court below erred in the following particulars to wit:

1. In sustaining the complainant's bill for any purpose.

2. In ruling that complainant was entitled to an account of the farming operations by themselves.

3. In ruling that complainant was entitled to a trust in the proceeds of the sale to the Everhart Coal Company.

4. In refusing to permit respondent to claim the benefit of the Statute of Limitations.

5. In affirming the proceedings of the Master, and confirming his reports.

6. In entering the final decree.

*A. Ricketts*, for the appellant.

*H. W. Palmer* (with him *Henry A. Fuller* and *L. W. Dewitt*) for the appellee.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

The plaintiff's bill alleges a partnership with the defendant in the business of carrying on a farm and buying and selling

lands, and asks for an account of profits and a decree for the payment of his share. So far as his claim embraces transactions in the purchase and sale of lands, it has been rejected by the Master and court below as being contrary to the Statute of Frauds, with the single exception of the sale of the Everhart coal property. That part of the claim is allowed, because it does not impinge upon the prohibition of the statute. The reason for the distinction, as expressed in the report, is, that the testimony of the plaintiff and several of his witnesses establishes declarations and admissions by the defendant, made after the sale was concluded and money paid, recognizing the plaintiff's interest in the proceeds of the sale, and these being personalty may be the subject of a parol contract. This view of this part of the plaintiff's claim appears to be in accordance with the authorities. Thus we held in Maffitt's Adm'r *v.* Rynd et al. 19 P. F. S., 380, that if a deed of land be made to A. and B. upon a parol trust that they will hold for the benefit of the grantor, or a third person, which parol trust cannot be enforced against the land, in consequence of the 4th section of the Act of April 22d, 1856 (Pamph. L., 533), yet if they sell the land and convert it into money, a parol declaration made by them subsequently to such sale and conversion will be entirely effectual. The statute raises no bar to the enforcement of a parol declaration of trust in respect of personal estate. And in Benjamin *v.* Zell, 4 Out., 33, we held that an interest in contingent profits arising from a sale of real estate to be made thereafter, does not amount to an interest in the land itself within the meaning of the Statute of Frauds. The contention in this case relates practically rather to its matters of fact than of law. The plaintiff averred in his bill a partnership, the character of which was set forth with sufficient precision. The defendant filed an exceedingly curt answer in which he simply denied that any such contract, as was set forth in the bill, was ever legally made between the parties. This answer was clearly evasive, as it did not deny the fact of the contract, nor its equitable obligation, but questioned only its legal effect. In such cases it has been held that the rule requiring two witnesses, or one witness and corroborating circumstances, to outweigh the answer, does not apply: 1 Dan. Ch. Pr., 846, n. 1, 4th Am. Ed. But the Master has found, and his finding has been approved by the court below, that the contract was made as claimed by the plaintiff, and that certain profits were realized of which the plaintiff was entitled to one half. This finding must be treated as the verdict of a jury, and binding upon us unless flagrant error can be shown in the conclusions reached, or that there was no evidence sufficient to

sustain them. It is contended that the defendant, as a witness, denies the whole allegation of partnership, but it is replied by the plaintiff that the contract is established by his own direct testimony and by strongly corroborative evidence of other witnesses. Several witnesses testified to admissions by the defendant of the plaintiff's interest in certain lands, but as the claim for profits on all of these except the Everhart property was rejected, only those declarations are important which relate to the latter. On this subject the testimony of Dr. M. C. Wilkins was quite specific and pertinent. He said he sold the Everhart Coal Company property, that he was engaged about a year in doing so, that he had frequent interviews with both these parties in relation to the sale, meeting them sometimes together and sometimes separately; that after the sale was completed the following conversation took place between him and the defendant:—"I asked Mr. Everhart for some money on account of my commission for making the sale; he said that I should have it when the sale was all completed; that that money all had to go to pay parties from whom he had bought, but that before I went away he would see James, his brother, as the latter had an interest." He then repeats another conversation which occurred at the final settlement when the plaintiff, the defendant and the witness retired together to agree upon the amount of commissions to be paid the witness, at which meeting the defendant agreed to pay an amount which was suggested by the plaintiff. He says further that a few days later he demanded the money for the whole amount agreed upon, but the defendant paid him only a part, and said he could not pay him any more until he had seen the plaintiff. It is difficult to reconcile this testimony with any other theory than that the plaintiff was interested with the defendant in the proceeds of the sale of that property, and that the fact of his being so interested was fully and freely admitted by the defendant. As these conversations occurred after the sale and related to the proceeds, the transaction is brought within the ruling of Maffitt's Adm'r v. Rynd, before cited. There was other evidence of an admission of an interest in this particular property, and there are other facts in the case which corroborate the theory of the plaintiff's interest and his direct testimony to that effect. It is not necessary, however, for us to repeat the testimony or review it, and we have only recurred to the portion quoted to show that there was corroborative evidence supporting the plaintiff's direct testimony and therefore, if believed, justifying the Master's conclusions. It is not necessary that each corroborating witness should have knowledge of, and testify to, the whole of the plaintiff's case. The defendant while

not denying the transactions, did deny the plaintiff's joint interest in them. Hence, admissions of the plaintiff's joint interest in particular transactions, made by the defendant to other disinterested persons, especially such as were parties to them and in the course, and as a part, of their occurrence, become very significant and highly persuasive evidence in support of the plaintiff's allegation of the existence of such joint interest. It must also be considered that the plaintiff himself testified, directly, distinctly and with minuteness of detail, to the transactions themselves, and to the character and extent of the joint interest held by himself therein. So that the case does not at all depend upon the mere admissions testified to by some of the witnesses, but upon those admissions in connection with the direct and positive testimony of the plaintiff, and indeed, also, upon other facts leading to the same conclusions. We are satisfied with the testimony on this subject, and think the findings of the Master and court were well sustained by the evidence.

As to the account itself of the profits of the partnership, so far as it was allowed by the Master and court, none of the assignments of error call it in question, and it is unnecessary, therefore, to examine it.

We think the prayer of the bill quite sufficient to cover all of the claim allowed by the Master. He did not sustain the whole of the claim, but he did sustain so much of it as related to the farming operations and part of the transactions in real estate, and transactions in real estate constituted part of the allegations of the bill.

In October, 1882, more than eight years after the bill was filed, and long after the case was heard on its merits, and after the Master had filed his report and a supplemental report, and after exceptions thereto were filed and while they were pending before the court, the defendant asked leave to file an amendment to the answer, claiming the benefit of the Statute of Limitations with the same effect as though it had been pleaded. The application was refused. We think it came too late. The partnership alleged by the plaintiff was a continuing one, commencing in 1853 and ending in 1870. The farming operations, as allowed by the Master and court below, embrace the whole of this period. The sale of the Everhart coal property occurred in 1863, but when the purchase money was paid does not appear. The dates of the conversations testified to by Dr. Wilkins are not given, and the same is true of the verbal promises testified to by the plaintiff. They were after the sale was completed, and were made at different times. The plaintiff says that on one occasion the defendant said, "And as for the Everhart Coal Company, that is in

debt, but I will turn you over your share as soon as I get it." From a memorandum appearing in the paper marked "Exhibit B," it appears the purchase money was to be paid in three equal payments, but at what times is not stated. The other transactions in real estate which were not allowed occurred continuously down to and including 1869. The present bill was filed in 1874, which was less than six years after the termination of the partnership, and it is not easy to see how the Statute of Limitations would be applicable as a defence even if allowed. But it was an entirely new defence, coming in at a very late stage of the proceedings, and in such circumstances it seems to be contrary to the authorities to permit it to be added. The practice is thus stated in 1 Dan. Ch. Prac., 780 (5th Am. Ed.): "Although the court will in cases of mistake, or other cases of that description, permit a defendant to correct his answer by supplemental answer, it always does so with great diffidence, where an addition is to be put upon the record prejudicial to the plaintiff, though it will be inclined to yield to the application if the object is to remove out of the plaintiff's way the effect of a denial, or to give him the benefit of a material admission. Therefore, where the application was made for the purpose of enabling the defendant to raise the Statute of Limitations as a defence, leave to file a supplemental answer was refused." This is especially the case after a decree for an account: McRae v. David, 7 Rich. Eq., 375. So where the object was to set up the Statute of Frauds: Cook v. Bee, 2 Tenn. Ch., 344. Where the purpose of the amendment is not to correct any mistake or misstatement in the original answer, but to set up substantially a new ground of defence at the hearing, it will not be permitted: Campion v. Kille, 1 McCarter (N. J.), 229, 232. By the 53d equity rule of this court it is provided that after replication or setting down of a cause for hearing an answer shall not be amended in any material matters, as by adding new facts or defences, or qualifying or altering the original statements, except by special leave of the court, upon notice and cause shown, after due notice to the adverse party, supported if required by affidavit. The record does not show that these requirements were complied with, and for all the reasons stated we see no error in the refusal of the amendment by the court below.

Decree affirmed and appeal dismissed at the cost of the appellant.