STEINHOFF *v.* BULLOCK.

1. FRAUDS, STATUTE OF—ORAL CONTRACT TO PURCHASE LAND VOID..
   An oral agreement between plaintiff and defendant whereby they were to purchase land together and take the title was void under the statute of frauds.

2. PARTNERSHIP—ORAL CONTRACT TO PURCHASE LAND—EVIDENCE.
   An oral contract to purchase land, *held,* under the facts, not to create a partnership.

3. APPEAL AND ERROR—REMARKS OF COURT—HARMLESS ERROR—DIRECTED VERDICT.
   Where the trial judge properly directed a verdict in favor of defendant, alleged improper remarks of the judge to the plaintiff *held,* not prejudicial.

Error to Genesee; Black (Edward D.), J.    Submitted April 8, 1921.    (Docket No. 57.)    Decided June 6, 1921.

Assumpsit in justice's court by James H. Steinhoff against George Bullock for installments due on a land

Authorities passing on the question of validity of parol partnership to deal in lands, see note in 4 L. R. A. (N. S.) 427; 33 L. R. A. (N. S.) 883, L. R. A. 1915A, 521.

contract. Defendant pleaded the general issue with notice of set-off. There was judgment of no cause for action, and defendant appealed to the circuit court. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed, and no new trial ordered.

*Cameron, Cain & Gadola* and *Guy W. Selby,* for appellant.

*Parker & Wilber,* for appellee.

CLARK, J. Plaintiff in justice's court sued defendant to recover installments due upon a land contract. Defendant pleaded the general issue with notice of set-off, a claimed amount due defendant from plaintiff as his share of the profit arising from the sale of certain land. From a judgment of no cause of action, defendant appealed. In the circuit court plaintiff abandoned his claim and declaration and the claim made by the defendant's plea became, counsel consenting, the issue for trial.

Plaintiff was a dealer in real estate. Defendant was a grocer, principally, and somewhat inclined to dealing in real estate. Both lived in Flint where defendant showed plaintiff, whom he had known many years and with whom he had dealt, a piece of land. Plaintiff was interested and said, as defendant testified:

" 'Let's buy it together,' and said, 'who has got it?' I told him Gene Mitlow. We talked it over and bought the property for $1,500 and Mr. Mitlow took a $25 deposit. He said, 'the parties live in Toledo.' He went down to Toledo to make his deposit there, came back and said they had raised their price to $1,600. Steinhoff said, 'what will we do about it?' I said looks as though he was working us for a hundred, it looks to me a good buy yet. We could not buy the material in the house for $2,500."

Upon the payment of the $25 plaintiff was given a

receipt for $25 of which defendant, although calling the writing an option, testified:

"*Q.* It was merely a receipt, was it not?
"*A.* A receipt for $25.   *   *   *
"*Q.* Who put up $25?
"*A.* Mr. Steinhoff.
"*Q.* Whose name was the option taken in?
"*A.* Taken in Mr. Steinhoff's name.  I had no general partnership nor arrangement with him.  This was the only deal of its character I had with him. What I was to get out of it was a share of the profits. That agreement was carried out between us with the exception that he has not as yet given me my share of the profits.   *   *   *
"*Q.* Now what was your arrangement with Mr. Steinhoff relative to this deal?
"*A.* That the day he paid the $25 I said, 'now you can pay that, and I will pay you half of it.  I have not very much money here.  I can give you a check for my half of it.  You pay all and I will produce the other half any time you want it.'
"*Q.* Who was to pay up the money for the purchase of this property?
"*A.* Both of us.
"*Q.* How were the losses to be divided?
"*A.* Equally, each of us receiving one-half profits and standing one-half losses.
"*Q.* Now did you ever put any money at all in this transaction?
"*A.* No, sir.
"*Q.* Was there any written agreement between yourself and Mr. Steinhoff?
"*A.* No, sir.
"*Q.* In whose name was the title to be taken to the property?
"*A.* Nothing said about that, he said we would sell it if we could.
"*Q.* But you were to purchase the property for a cash price, were you not?
"*A.* Yes, sir.
"*Q.* So that you were to get the property, the title was to be taken by one of you in the property, or both of you, was it not?

"*A.* I suppose if we took the title, it was to be taken jointly.

"*Q.* Did you ever do anything toward financing this transaction?

"*A.* I told him I stood ready. I had the money in the bank to pay my half of it and urged him to take the deed, close the deal, and hold the property.

"*Q.* You wanted him to take the deed?

"*A.* Yes, sir.

"*Q.* Then you contemplated at the start taking the title to this property, did you not?

"*A.* No, we did not unless—if we could sell it readily, but if we could not sell it readily we would take the deed."

Plaintiff testified:

"I first took the option on this property in question in my own name. I paid the money.

"*Q.* When you say an option, do you mean the receipt that was taken?

"*A.* I made a deposit on it, got a receipt for it.

"*Q.* What was the arrangement you had with Mr. Bullock, if any?

"*A.* Mr. Bullock came in, I was short of capital for carrying on the business that I wanted to carry on. He said he thought there were better bargains in other parts of the city than in the Detroit street section and urged me to go out and look at them. He showed me this particular piece of property and suggested we buy it. I told him I had two or three hundred dollars that I could use, if he did not have enough to finance the whole. The proposition was that he was to finance the deal. I was to advertise and sell the place and was to divide the proceeds. He was to furnish the money, I would do the work and divide the proceeds. As soon as we looked at the property I suggested we make a deposit on it then it was the next day afterwards before that real estate man would take a deposit on it. * * *

"I asked Mr. Bullock repeatedly if he wanted to put up part of the deposit. He said for me to put it up, if there was any more to be put up he would. We had an understanding at the time, we went out and priced this property at 1500 cash or 1800 with.

600 down.     So I suggested that we pay cash for it and get it at the lower figure, that with the improvements that was on it we would be able to get some mortgage from the bank, that if he did not have enough cash to make up the difference between what we could get in the mortgage I had two or three hundred dollars I could put in myself."

Defendant advanced no money.     After considerable delay plaintiff, it seems, took the deed of the property in his own name, made sale, advised defendant that the profit was $100 and gave him $50.     The profit was $529.     A motion for a directed verdict in plaintiff's favor was denied.     A verdict in favor of defendant was directed for $264.50     Plaintiff has brought the case here by writ of error.

The oral agreement between the parties contemplated that each party should have an interest in the land itself.     They were to purchase and take title.     The agreement is within the statute of frauds (chapter 231, 3 Comp. Laws 1915) and is void—a nullity—and cannot be used for any purpose.     See *Raub* v. *Smith,* 61 Mich. 543 (1 Am. St. Rep. 619) ; *Smelling* v. *Valley,* 103 Mich. 580.     And upon the facts above set forth this case is controlled by the following cases: *Nester* v. *Sullivan,* 147 Mich. 493 (9 L. R. A. [N. S.] 1106) ; *Tuttle* v. *Bristol,* 142 Mich. 148; *Pulford* v. *Morton,* 62 Mich. 25; *Brosnan* v. *McKee,* 63 Mich. 454; *McLennan* v. *Boutell,* 117 Mich. 544.

And the agreement here was between principals, not between principal and agent, and is not controlled by the holding in *Carr* v. *Leavitt,* 54 Mich. 540, and similar cases.     Nor was there an agreement here merely to secure and sell an option or options to bring the case within *Mullholland* v. *Patch,* 205 Mich. 490, or *Brittson* v. *Smith,* 165 Mich. 222, and to take it out of the statute.

It is also claimed that this action at law cannot be maintained, there being a partnership, but the remedy

if any is by bill in equity.    The parties did not claim a partnership relation (see testimony above quoted) and upon the facts one cannot be claimed.    See *Mullholland* v. *Patch, supra,* and *Morrison* v. *Meister,* 212 Mich. 516, where this question is fully considered.

It is also urged at length that statements by the trial judge to plaintiff in the presence of the jury were highly prejudicial.    The answer to this is that a verdict was directed.    No other question is raised by counsel.    A verdict for plaintiff should have been directed.

Judgment reversed, without a new trial, and with costs to plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.