# Davis, Appellant, *v.* Hillman.

*Contracts—Parol contract—Statute of frauds—Purchase and resale of land—Division of profits—Fraud—Executed agreements—Partnership.*

1. A parol agreement between two persons to buy and sell a tract of land, and equally divide the profits thereof, the first to supply the purchase money and take the title in his own name, and the second to contribute his services in connection with the negotiations, is within the statute of frauds.

2. The party making the conveyance to his own company cannot, in availing himself of the provision of the statute of frauds, be charged with fraud.

3. The mere refusal to perform as agreed, is not a fraud.

4. Such a transaction was not a partnership, nor was it a "joint adventure" with reference to the profits from sale of land, inasmuch as the land was not purchased for common account, nor was any portion of the consideration paid by the party conducting the negotiations, nor did any liability for possible losses attach.

5. Nor was this agreement a dealing in real estate by partners as part of the regular business, within the rule that such an agreement need not be in writing.

6. Nor was the transaction within the rule that the statute of frauds does not apply to performed agreements.

7. Nor can it be charged that the holder of the title, in making the conveyance practically to himself, was fraudulently putting it beyond his power to carry out the parol agreement, inasmuch as he might, without any fraud, have refused to resell, and so continue to hold the property indefinitely in his own name.

Mr. Justice KEPHART dissented.

Argued September 30, 1926.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 71, March T., 1926, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1925, No. 2107, for defendant, on questions of law raised by affidavit of defense, in case of H. A. Davis v. J. H. Hillman, Jr.   Affirmed.

Questions of law raised by affidavit of defense.   Before FORD and ROWAND, JJ.

The opinion of the Supreme Court states the facts.

Judgment for defendant in opinion by FORD, J. Plaintiff appealed.

*Error assigned* was judgment, quoting record.

*John C. Bane,* with him *McIlvain, Murphy & Mohn,* for appellant.—The cause of action here is not within the purview of the statute of frauds: Benjamin v. Zell, 100 Pa. 33; Howell v. Kelly, 149 Pa. 473; McBride v. Paper Co., 263 Pa. 345.

The procedure by plaintiff is altogether regular, and is not unusual, and has been recognized in a multitude of instances in Pennsylvania.

The subject-matter of plaintiff's action being a single undertaking, assumpsit can be maintained, regardless of whether the relation between plaintiff and defendant was or was not technically a partnership: Kutz v. Dreibelbis, 126 Pa. 335; Canfield v. Johnson, 144 Pa. 61; Welch v. Miller, 210 Pa. 204; Rosenblatt v. Weinman, 225 Pa. 200.

Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby: Lovell v. Ins. Co., 111 U. S. 264; Ætna Explosive Co. v. Alkali Co., 277 Pa. 392; Bitner v. Brough, 11 Pa. 127.

*M. W. Acheson, Jr.,* of *Sterrett & Acheson,* for appellee.—The alleged agreement is within the statute of frauds: Everhart's App., 106 Pa. 349; Benjamin v. Zell, 100 Pa. 33.

To refuse performance of the agreement and retain title in any form not a fraud: Sausser v. Steinmetz, 88 Pa. 324; Wilson v. Coal Co., 269 Pa. 127.

Under plaintiff's allegations, this is an action for breach of an executory agreement and is not on or for the fruits of any execution.

For one to deny being under obligation to sell his land, in spite of prior promise so to do, is to repudiate an undertaking that is still executory.

To repudiate a promise implies it is unperformed: Ætna v. Alkali Co., 277 Pa. 399.

The claim plaintiff sued for is void: Sausser v. Steinmetz, 88 Pa. 324; Wilson v. Coal Co., 269 Pa. 127.

While plaintiff, indeed, might bring an action for expenses, he may not, under any such guise, recover, what alone he here seeks, alleged latent value of land over cóst, for this would be parol claim to an interest in land allowance whereof would amount to specific enforcement in nullification of the statute: Stephens v. Barnes, 30 Pa. Superior Ct. 127; Hertzog v. Hertzog, 34 Pa. 418; Breniman v. Breniman, 281 Pa. 304; Dumars v. Miller, 34 Pa. 319.

Plaintiff, under settled law, was free to await a sale, or himself at least to produce a buyer. He could ignore any repudiation, which, only at his, plaintiff's, option, could rise to the status of breach: Ætna Co. v. Alkali Co., 277 Pa. 392, 393, 399; Zuck v. McClure, 98 Pa. 541, 545; Echard Coal Co. v. Mudge, 234 Pa. 86, 88; Roehm v. Horst, 178 U. S. 1, 13.

OPINION BY MR. JUSTICE SADLER, November 29, 1926:

Davis, plaintiff, brought this action of assumpsit against defendant, Hillman, to recover damages for breach of a parol contract to acquire and resell land, the profits derived to be equally divided between the parties. The former had acquired knowledge of coal properties in southwestern Pennsylvania, and at various times had interested the latter in purchases and sales of such. In June of 1919, he learned that the Ellsworth Collieries Company desired to secure a certain acreage, which he could buy, and that it was willing to sell a portion of its tract. It was orally agreed between the two that the first properties should be acquired, and deeded to the company named, which should then trans-

fer in return a part of its land to Hillman. To effect this result the necessary funds were supplied solely by the defendant Davis contributing his services in conducting the negotiations, and was promised in consideration one-half of the gain which might be secured on a resale for the best price obtainable. On October 18, 1920, the conveyance of the land, purchased for $574,-274.64 was made to the Collieries Company, and it in turn deeded to Hillman 630 acres of its property, as promised. After this date defendant denied that plaintiff had any interest, and, on November 4th of the same year, the former conveyed the land to the Hillman Gas Coal Company, a corporation of which the stock was nearly all owned by him, for the sum of one dollar, setting forth in the deed that it had been acquired from the Collieries Company in trust for the grantee.

The statement filed sets forth the verbal agreement, which it was claimed had been repudiated, as already recited, and asked as damages, for loss of the bargain, one-half of the excess market value over the sum paid by Hillman. It is further alleged that the transfer to the Gas Coal Company, later made, was fraudulent, and, as appellant states in his argument, was in reality a "conveyance to himself." No averment appears that any offer to purchase at an increase has been made, or could have been secured, plaintiff contenting himself with the statement as to market value, nor is it set forth that there had been any profit made when the property was deeded for one dollar in November. An affidavit of defense was filed, raising the legal question of the sufficiency of the statement to show a good cause of action, and denying the enforceability of the oral agreement in view of the prohibition of the statute of frauds. The trial judge sustained the objections, and dismissed the proceeding, a conclusion approved by the court in banc, and this appeal resulted.

The Statute of Frauds (March 21, 1772, 1 Sm. L. 389) prohibits the creation of interests or estates in any land

by parol. Its purpose is to prevent the assertion of verbal understandings, and eliminate the possibility of perjury in the enforcement of obligations depending for their support on the memory of witnesses, and therefore makes necessary reduction of the understanding of the parties to writing. "The rule that requires claims to land, or its equivalent value, to be written, is plain, simple, reasonable and just": Hertzog v. Hertzog, 34 Pa. 418, 438. "Neither party could plead ignorance of the statute, and hence both are presumed to have known that either might take advantage of its terms. Either party had a right to refuse its execution, and the defendants were guilty of no fraud in availing themselves of such right": Sausser v. Steinmetz, 88 Pa. 324; Wilson v. Pennsy Coal Co., 269 Pa. 127, 130.

Like legislative provision is made where parol trusts in land are claimed, and such cannot be successfully asserted: Act April 22, 1856, P. L. 533; Meason v. Kaine, 67 Pa. 126. Unless the understanding of the parties is in writing, rights contracted for cannot be enforced. This is subject to exception where the relation arises by implication or legal construction, but there are no allegations in the statement before us to make out any resulting trust. There was no wrong done by Hillman in taking title in his name, nor did plaintiff pay any portion of the purchase money. No fraud in the inception of the contract is claimed, and the showing of an unkept promise is not sufficient to create a trusteeship ex maleficio: Dorr v. Leippe, 286 Pa. 17. The mere fact of a refusal to perform as agreed is not enough (Meredith v. Punxsutawney National Bank, 275 Pa. 314; McClosky v. McClosky, 205 Pa. 491), and it is in this regard only that wrongdoing on the part of defendant is asserted, followed by his later transfer of the land to the Gas Coal Company.

If the parol agreement made by the parties created an interest or trust in land, then it cannot be made the basis of an action here. There could be no specific per-

formance decreed, nor ordinarily a recovery of damages for loss of the bargain, for this would in effect have the same result: Breniman v. Breniman, 281 Pa. 304. It is, however, insisted that the transaction is in effect a partnership or joint adventure to deal in lands, and as a result without the statute, since interests so held are to be treated as personalty, and by the weight of authority it is so held, provided the parties bear such relation: Howell v. Kelly, 149 Pa. 473; Chester v. Dickerson, 54 N. Y. 1, relied on by appellant, distinguished and compared, with other authorities of the same state, in Edgecomb v. Clough, 275 Pa. 90; Schultz v. Waldons, 60 N. J. Eq. 71, 47 Atl. 187; Morton v. Nelson, 145 Ill. 586, 32 N. E. 916; Steinhoff v. Bullock, 214 Mich. 273, 183 N. W. 31. In this case, there was no allegation of partnership, nor was there a "joint adventure" with reference to profits from sale of land, a term usually applied to a single partnership transaction, for the land was not to be purchased for common account, nor was any portion of the consideration paid by plaintiff, nor did any liability for possible losses attach: Clark v. Muir, 298 Ill. 548, 132 N. E. 193. It was rather a contract similar to brokerage or agency in carrying on the negotiations (Tuttle v. Bristol, 142 Mich. 148, 105 N. W. 145; Johnston v. Brown, 300 Fed. R. 737; Manker v. Tough, 79 Kan. 46, 98 Pac. 792), or of employment: Goodwin v. Camp, 295 Fed. R. 785. This was not a dealing in real estate by partners as a part of the regular business, and the rule that an agreement, creating a firm so engaged, need not be in writing, does not apply.

Appellant argues further that this agreement is no longer within the statute, if it could ever have been said to apply, since the land has been transferred by defendant. "It is well settled that the statute of frauds applies only to executory contracts, and not to agreements which have been completely executed and performed on both sides. In such case the rights, duties and obligations of both parties are entirely unaffected by

the statute": 27 C. J. 321. Applying this rule, it has been held a recovery of contingent profits actually realized could be had. In a leading Pennsylvania case this language is used: "The claim is not for consideration money which he agreed to pay for title which he acquired to the land; but for profits which he afterwards acquired by a sale thereof. The obligation to pay the claim in contention in no manner affected the title which he acquired and held. It was wholly contingent on his selling the land for a sum larger than he paid therefor...... His liability originating in the contract became fixed and determined on his sale at a profit": Benjamin v. Zell, 100 Pa. 33, 36. Following this decision, the distinction between performance and the actual receipt and holding of the gain obtained, and the executory contract to resell, not completely carried out, is well illustrated by Everhart's App., 106 Pa. 349, where recovery was permitted of a share of profits derived from one property sold, and denied as to another, it appearing this contingency had not occurred. Other cases, cited by appellant, wherein recovery was had, will be found to come within the principle, and show the contracts involved to have been executed, and excess funds received to be in the hands of defendant: Howell v. Kelly, supra; McBride v. West Pa. Paper Co., 263 Pa. 345.

The facts averred in plaintiff's statement do not bring the claim within the rule stated. It sets forth that the contract was repudiated on October 18, 1920, and claims the right to damages from that date, when defendant refused to perform. Whether this was indicative of an election to accept the rescission, it is not necessary to decide, though, if this was true, plaintiff's rights would be measured as of that time: Ætna Explosives Co. v. Diamond Alkali Co., 277 Pa. 392. No action for specific performance, or the equivalent, could be maintained while Hillman remained the owner as he was on October 18th, the date from which claim is made in this case, for the statute clearly would prevent recovery. There is

no allegation that he subsequently disposed of the land at a profit, and that he has moneys in his possession as a result, to a part of which Davis is entitled, and without proof of which his demand cannot be sustained.

It is urged that in making a conveyance to the Hillman Gas Coal Company, practically to himself, in November, he was fraudulently putting it beyond his power to carry out the parol agreement. The same argument could be advanced if he refused to resell, and continued to hold indefinitely in his own name. If in fact the ownership remained in him, this action must fall, and if transferred, the same is true, unless he realized thereby a profit, a fact not asserted. It was not claimed that any other purchaser was produced, or was willing to give a price which would net an excess, or that such was received from the grantee. As we have heretofore noticed, the refusal to carry out the oral agreement did not form the basis for a recovery. The denial of any interest in Davis is not evidence of fraud, and such must be established, if there is to be an award for the loss of the bargain, as here claimed, based on the market value of the land on October 18, 1920. No claim for advances made, expenses incurred, or value of service rendered is asserted: Breniman v. Breniman, supra; Meason v. Kaine, supra; Thompson v. Sheplar, 72 Pa. 160.

Considering the statement filed to correctly and fully explain the transaction, and admitting the truth of all facts sufficiently set forth, though not legal conclusions based thereon, the learned court below held the parol contract to come within the prohibition of the statute. In so holding we see no error, and the assignments of error are overruled.

The judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

This case comes up on an affidavit of defense raising questions of law, which is in the nature of a demurrer. The facts and inferences therefrom must be taken as

true.   Davis, the plaintiff, knew the Ellsworth Coal
Company wanted to buy additional coal lands and sell
part of its holdings.   He knew he could buy the land
Ellsworth wanted and that its land could be resold ad-
vantageously.   He lacked the money necessary to handle
the deal.   Having had business relations with Hillman,
the defendant, he submitted the matter to him.   It was
agreed between them that Hillman was to secure the
money and plaintiff was to furnish all the services in the
negotiations, closing the deals and all matters in con-
nection therewith.   The land received from Ellsworth
was to be sold and they were to divide equally the profits
realized on the sale.   The title to this land was to be in
Hillman's name.   The bargain was faithfully carried out
up to the point of reselling these lands and dividing the
probable profits of $400,000.   Here is where the red line
indelibly marks the transaction.   When Hillman found
title to the land securely lodged in him, he "fraudulently
conveyed said coal land to Hillman Gas Coal Company,
a corporation in which the defendant was then and there
largely interested, for the consideration of one dollar."
The inference is manifest.   It was to deprive the plaintiff
of his share of the gain.   Hillman knew the small minority
interest in the company prevented its being a sale to
himself under the cloak of corporate entity, and that no
matter what the real transaction was if the consideration
was named as a dollar, no profit could be claimed, though
he unblushingly admits that the land in the market was
worth $400,000 more than had been paid for it.   When
he is asked to give plaintiff what was due him, he says,
"No, the statute of frauds will not permit him to get
any part of it," and the majority opinion in this case
sustains that view.   All these facts and inferences there-
from must be taken as true; that is the story and the
plaintiff is cast out by what I believe to be a misappli-
cation of the statute.   No further action may be insti-
tuted as the claim is barred by the statute of limitations.
This is the last of repeated efforts to secure justice.

The statute of frauds is directed at the form certain contracts must assume to be binding in law; notwithstanding the statute, the contract exists even if it is not clothed with the necessary form: Hertzog v. Hertzog, 34 Pa. 418. The penalty for failure to observe the law is that no action can be brought to enforce it until the omission is made good, or unless the facts fall within one or two recognized exceptions. The one we are interested in is the doctrine of performance, long since announced in England as controlling a given state of facts and universally held in this country as the law. When the parol contract has been performed, or partly performed, the statute is no longer available as a rule of evidence to defeat the action. As has been stated, the statute has no longer any office to perform: Brown v. Farmers' Trust & Loan Co., 22 N. E. 952.

This suit, therefore, is not for an interest in land but is for loss of profits, based on the breach of a valid contract, whereby one of the parties, through fraud, so disposed of the profits, that, while they could not be distributed as such, his personal estate benefited by the maneuver, while the plaintiff was to be denied, for all time, any share in them.

In the words of Mr. Justice MERCUR in Benjamin v. Zell, 100 Pa. 33, 36, where the facts were similar to these, it is "not for consideration money which he agreed to pay for title which he acquired to the land; but for profits which he afterwards acquired for a sale thereof. The obligation to pay the claim in no manner affected the title which he acquired and held." And in Howell v. Kelly, 149 Pa. 473, 475, it was held that an interest in contingent profits, arising from a sale of real estate, to be made thereafter, does not amount to an interest in the land itself, within the meaning of the statute of frauds. This rule is not limited to cases of partnership: see Everhart's App., 106 Pa. 349. In McBride v. Western Pennsylvania Co., 263 Pa. 345, there was no suggestion that the agreement was for the creation of a

partnership, and yet the decision of the court was based upon the same principle.

But it is said that, although the contract would not be within the statute if a sale had been made and profits realized, still there can be no recovery in this case because the defendant did not actually realize a profit from the transfer of the land. The cases cited above are distinguished on the ground that the principle stated applies only where the agreement has been executed, and a sale made. The majority opinion suggests that in Everhart's App., supra, recovery was specifically denied as to lands which had not been sold, quoting from Benjamin v. Zell, supra. We need not discuss this, and may assume, for the purposes of this case that the defendant could have retained the land in question as long as he desired to do so, yet I believe that the facts averred in the statement give the plaintiff a right to recover. Here we have a very different, and a stronger case. Here the defendant has done something more than merely repudiate his contract. He has, in bad faith, transferred the property for a nominal consideration to a corporation, of which he owns the controlling interest, thereby making performance of his agreement with this plaintiff impossible. In my opinion the case turns upon this point. Conceding (as I said above, for the purpose of argument) that the defendant could have retained the title, and even that he could have given it away, nevertheless he becomes liable in this case because the conveyance was made fraudulently (as the jury might well have found under the pleadings) for the purpose of preventing the plaintiff from receiving his share of profits which might be realized upon a sale of the land. The case is analogous to that of an attorney, employed under a contingent fee contract, whose client settles the case without his knowledge or consent. It is clear that the attorney may recover: Thole v. Martino, 56 Pa. Superior Ct. 371.

The majority opinion says that the word "fraudulently" in the plaintiff's statement is a conclusion of law, which is not to be taken as admitted on demurrer, and that the mere conveyance for a nominal consideration, in violation of the contract, is not fraud. If "fraudulently" is to be construed as asserting only a conclusion of law, the words "with intent to defraud" if they had been used, would have constituted an allegation of fact, and hence, to turn a man out of court because of the use of the former expression instead of the latter, would be an inexcusable and unnecessary relegation to the days of strict pleading, when a man's rights were determined by his ability (or that of his attorney) to guess the correct word.

The majority opinion states that to allow a recovery on this contract would be equivalent to granting specific performance of the promise to sell, citing Breniman v. Breniman, 281 Pa. 304. My answer to this is that defendant has specifically performed his promise by conveying the land to the corporation, but in performing this promise he has fraudulently deprived plaintiff of his profits as charged in the bill.

In any event, appellant is entitled, upon the authority of Hertzog v. Hertzog's Adm'r, supra, relied upon by the majority opinion, to recover in a suit upon the contract, the damages directly resulting from the breach, such as his expenses in negotiating the deals between the Ellsworth Co. and the defendant, and the value of his services. This right cannot be affected by the mere fact that the statement of the amount of his claim is based upon the wrong measure of damages. That is a question of law, to be determined by the court in submitting the case to the jury. No advantage can be gained by forcing him to bring a new action based upon exactly the same facts but stating a different sum as the amount of his damages. For this reason, the affidavit of defense should have been overruled, and the case should have been tried before a jury.

Under the admitted facts, the sale to the Hillman Coal Company was a sale to a third party and the profit would be the difference between the market value and the cost. The fact that this value is added to his stock is an immaterial circumstance. It goes directly to him and is for his benefit.

In the scheme employed, Hillman, by his majority control in the corporation to which he sold, retains his grip on the land, though the title is secure in the corporation. He not only benefits from increment in value, but, through the long drawn out process of mining it will doubly return to him through the sale of coal. Is it possible that our powers, equitable or otherwise, are so supine and helpless that they cannot prevent such over-reaching or restore an injured person to his rights? The court should say to him that, under his own admission, he has received profits which, in this case, would be the difference between the fair market value when sold, and the cost at which it was purchased, including the necessary expenses.

In the recital of facts in the statement of claim it sets forth that, "On October 19, 1920,......defendant repudiated the parol contract." This was before the deed from Hillman to the coal company. There is not a single line in that paragraph or anywhere in the statement of claim that damages were claimed as of that date, or any date before the performance of the parol contract, evidenced by the deed from Hillman to the coal company. On the contrary, this is precisely what the statement says: "Afterwards, on November 4, 1920, the defendant wrongfully and fraudulently conveyed said coal land ......The said coal land in the latter part of October and November 1920, was of the......market value of ......$400,000 and upwards above the cost price...... Wherefore the plaintiff avers the defendant is justly indebted to him in the sum of one-half of the profit, $200,-000," with interest from October 18, 1920. This action was begun some time after November 4th, and the claim

for damages or profit was squarely predicated on the allegation above recited that took place in November. He may or may not be entitled to interest from October 18, 1920, but that will not control his claim definitely fixed by the sixteenth, seventeenth and eighteenth paragraphs wherein the sum is first mentioned and that as of the date of sale. Furthermore, while it is important that a claim be well stated under such allegation of fraud as is contended for in the pleadings in this case, courts should not be over zealous to permit technical errors, if this can be considered one, to prevail against a jury's determination of the facts.

I would reverse the judgment of the court below and send the case to the jury.